JAMES R. MOORE, APPELLANT, V.
NEBRASKA BOARD OF PAROLE ET AL., APPELLEES.
679 N.W.2d 427

Filed May 11, 2004.   Nos. A-03-810, A-03-901.

526

James R. Moore, pro se.

No appearance for appellees.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

James R. Moore appeals the district court's two denials of his applications to proceed in forma pauperis and dismissal of his petition on the basis that it is frivolous. We note that Moore is currently incarcerated and that the appellees did not submit a brief on appeal. Given these facts, this case was ordered submitted without oral argument pursuant to this court's authority under Neb. Ct. R. of Prac. 11B(1) (rev. 2000).

On appeal, Moore asserts that his petition is not frivolous because he is entitled to the relief he requests and that as such, his applications to proceed in forma pauperis should have been granted. Moore bases his entitlement to relief on the argument that the parole laws in effect at the time of his sentencing should apply to him pursuant to the Ex Post Facto Clause of the U.S. Constitution. However, the U.S. Supreme Court has held that the retroactive application of procedural parole statutory amendments does not violate the Ex Post Facto Clause of the U.S. Constitution. We find that Moore is not entitled to relief because the amended parole laws, which Moore argues are ex post facto laws, are procedural in nature. In addition, the retroactive application of those laws does not create a sufficient risk of increasing the measure of punishment for prisoners or result in increasing Moore's time of incarceration. As such, the parole laws as amended do not violate the Ex Post Facto Clause of the U.S. Constitution, and we thus affirm the district court's denials of his applications to proceed in forma pauperis and dismissal of his petition.

## II. BACKGROUND

Given the procedural nature of this case, the record is without many facts. However, the facts of this case do not affect the outcome, so we will summarize them based on Moore's brief on appeal. No brief for appellees was filed.

Moore is an inmate at the Nebraska State Penitentiary in Lincoln, Nebraska. Moore was sentenced in 1980 to a term of 28 to 60 years' imprisonment. In 1995, Moore became eligible for parole. From 1995 until the present, the parole board has deferred Moore's case each year after conducting a parole review.

Moore's most recent deferral in April 2003 instigated his filing a petition for a writ of mandamus. Moore alleged that the parole board "had a clear and legal duty to set a 'final parole hearing.'" Brief for appellant at 3. Moore also filed an application to proceed in forma pauperis. A judge of the district court for Lancaster County, Nebraska, determined that Moore's petition was frivolous and denied his application to proceed in forma pauperis. Specifically, the judge stated that the parole board did not have to conduct a parole hearing unless a parole review established Moore was reasonably likely to be granted parole and that Moore had failed to allege that a parole review had established he was reasonably likely to be granted parole.

Moore filed a notice of appeal, again filing an application to proceed in forma pauperis. Moore's second application was also denied, and the order by a different judge stated that Moore's asserted legal positions lacked merit and that his action was frivolous. Moore then filed a notice of appeal of that order.

Moore's two appeals have been consolidated for purposes of our review.

## III. ASSIGNMENTS OF ERROR

Moore assigns as error on appeal that the district court erred and abused its discretion in (1) twice denying him leave to proceed in forma pauperis without a hearing and (2) holding that his petition was frivolous.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

A district court's denial of in forma pauperis status under Neb. Rev. Stat. § 25-2301.02 (Cum. Supp. 2002) is reviewed de

novo on the record based on the transcript of the hearing or the written statement of the court. *Martin v. McGinn*, 265 Neb. 403, 657 N.W.2d 217 (2003) (citing § 25-2301.02(2) and *Cole v. Blum*, 262 Neb. 1058, 637 N.W.2d 606 (2002)).

■ Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997) (citing *In re Interest of Jeffrey R.*, 251 Neb. 250, 557 N.W.2d 220 (1996)).

### 2. HEARING PRIOR TO DENYING IN FORMA PAUPERIS STATUS

Moore argues that the district court erred in denying his applications to proceed in forma pauperis without first holding a hearing. Moore asserts that pursuant to *Flora v. Escudero*, 247 Neb. 260, 526 N.W.2d 643 (1995), the district courts were required to hold a hearing before denying his applications to proceed in forma pauperis. Moore's argument is without merit.

■ In *Flora*, 247 Neb. at 262, 526 N.W.2d at 645, the Nebraska Supreme Court stated:

> In the future, when it appears that a trial court may deny an appellant leave to proceed in forma pauperis, a hearing shall be held. As required by Neb. Rev. Stat. § 25-2301 (Reissue 1989), the trial court must certify in writing if, in its judgment, an appeal is frivolous. A written statement of the trial court's reasons, findings, and conclusions for denial of appellant's leave to proceed in forma pauperis must accompany its certification.

However, in 1999, the statute referenced in the above quote was substantially amended, see Neb. Rev. Stat. § 25-2301 (Cum. Supp. 2002), and two statutes were added, see Neb. Rev. Stat. §§ 25-2301.01 (Cum. Supp. 2002) and 25-2301.02. Section 25-2301.02 applies to the case at bar and provides in pertinent part:

> (1) An application to proceed in forma pauperis shall be granted unless there is an objection that the party filing the application: (a) Has sufficient funds to pay costs, fees, or security or (b) is asserting legal positions which are frivolous or malicious. The objection to the application shall

be made within thirty days after the filing of the application. Such objection may be made by the court on its own motion or on the motion of any interested person. The motion objecting to the application shall specifically set forth the grounds of the objection. *An evidentiary hearing shall be conducted on the objection unless the objection is by the court on its own motion on the grounds that the applicant is asserting legal positions which are frivolous or malicious.* If no hearing is held, the court shall provide a written statement of its reasons, findings, and conclusions for denial of the applicant's application to proceed in forma pauperis which shall become a part of the record of the proceeding. . . .

(Emphasis supplied.)

In *Cole v. Blum,* 262 Neb. 1058, 1061, 637 N.W.2d 606, 609 (2002), the Nebraska Supreme Court stated:

Except in those cases where the denial of in forma pauperis status "would deny a defendant his or her constitutional right to appeal in a felony case," § 25-2301.02 allows the court "on its own motion" to deny in forma pauperis status on the basis that the legal positions asserted by the applicant are frivolous or malicious, provided that the court issue "a written statement of its reasons, findings, and conclusions for denial." A frivolous legal position is one wholly without merit, that is, without rational argument based on the law or on the evidence.

The Supreme Court further stated: "This statute contains no requirement that the court grant leave to amend the underlying petition before denying a request to proceed in forma pauperis." 262 Neb. at 1063, 637 N.W.2d at 610.

Clearly, § 25-2301.02 supersedes the requirement set forth in *Flora, supra,* that a court provide a hearing before denying any application to proceed in forma pauperis. Accordingly, the standard which the district court was required to meet in this case was to provide a written statement of its reasons, findings, and conclusions for denying Moore's applications to proceed in forma pauperis.

The first judge's order, which the second judge adopted and attached to his order, stated:

Neb. Rev. Stat.§81-1111 [(Reissue 1999), presumably the court meant Neb. Rev. Stat. § 83-1,111 (Supp. 2003), since § 81-1111 concerns the Department of Administrative Services and the Accounting Administrator] does not require that a parole hearing be set unless the Board [of Parole] first determines that the offender is likely to be paroled. See *Ditter v*[.] *Nebraska B*[*d.*] *of Parole*, 11 Neb[.] App. 473, 655 N.W. 2d 43 (2002) and *Van A*[*c*]*keren v*[.] *Nebraska B*[*d.*] *of Parole*, 251 Neb[.] 477, 558 N.W.2d 48 (1997). Because [Moore] has not alleged that the Board [of Parole] has determined that he is likely to be paroled, his petition lacks legal merit.

We find that this sufficiently provides a statement of the court's reasons, findings, and conclusions for denying Moore's applications to proceed in forma pauperis. As such, the district court did not err in denying Moore's applications to proceed in forma pauperis without first holding a hearing.

### 3. FRIVOLOUS PETITION

Next, Moore alleges that the district court erred in holding that his petition for a writ of mandamus was frivolous. Moore's argument is incorrect.

Mandamus is a law action. It is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person where (1) the relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act in question, and (3) there is no other plain and adequate remedy available in the ordinary course of the law. *Pratt v. Nebraska Bd. of Parole*, 252 Neb. 906, 567 N.W.2d 183 (1997). In considering whether to grant a writ of mandamus, we consider whether the duty to be enforced was one which existed at the time the petition was filed. *Id.* Mandamus is available to enforce the performance of ministerial duties of a public official but is not available if the duties are quasi-judicial or discretionary. *Id.* The Board of Parole's duty to recognize parole eligibility is ministerial, and thus, petition in error proceedings are not available. See *id.*

In the case at bar, the district court determined that the parole board did not have a clear duty; specifically, both judges determined that a statutory duty to hold a parole hearing exists only if it is first determined that the offender is reasonably likely to be paroled. The judges then stated in their orders that because Moore did not allege that the parole board had determined that he is reasonably likely to be paroled, his petition lacks legal merit. Moore, on the other hand, alleges that the parole board does have a duty to provide him a hearing pursuant to the statutes as they existed when he was convicted, which he asserts should be applied to him. The district court was correct.

At the time of Moore's conviction, Neb. Rev. Stat. § 83-1,111 (Reissue 1981), provided in pertinent part:

> (1) Every committed offender shall have a hearing before a majority of the members of the Board of Parole within sixty days before the expiration of his minimum term less any reductions. Every committed offender shall be interviewed within sixty days prior to his final parole hearing by a member of the Board of Parole. The hearing shall be conducted in an informal manner, but a complete record of the proceedings shall be made and preserved.
>
> . . . .
>
> (4) If the board defers the case for later reconsideration, the committed offender shall be afforded a parole hearing at least once a year until a release date is fixed. The board may order a reconsideration or rehearing of the case at any time.

At the time Moore filed his petition, May 29, 2003, § 83-1,111 (Supp. 2003), provided in pertinent part:

> (1) Every committed offender shall be interviewed and have his or her record reviewed by two or more members of the Board of Parole or a person designated by the board within sixty days before the expiration of his or her minimum term less any reductions as provided in [Neb. Rev. Stat. §] 83-1,110 [(Supp. 2003)]. If, in the opinion of the reviewers, the review indicates the offender is reasonably likely to be granted parole, the Board of Parole shall schedule a public hearing before a majority of its members. At such hearing the offender may present evidence, call witnesses, and be represented by counsel. If, in the opinion of

the reviewers, the review indicates the offender should be denied parole, the offender may request an additional review by a majority of the members of the board. A review by the majority of the members of the board may be conducted not more than once annually. Any hearing and review shall be conducted in an informal manner, but a complete record of the proceedings shall be made and preserved.

. . . .

(4) If the board defers the case for later reconsideration, the committed offender shall be afforded a parole review at least once a year until a release date is fixed. The board may order a reconsideration or a rehearing of the case at any time.

Prior to May 24, 2003, § 83-1,111(4) (Reissue 1999) provided: "If the board defers the case for later reconsideration, the committed offender shall be afforded a parole *hearing* at least once a year until a release date is fixed. The board may order a reconsideration or a rehearing of the case at any time." (Emphasis supplied.)

In 1986, the Nebraska Legislature amended § 83-1,111(1) to incorporate a requirement that rather than a hearing within 60 days of the expiration of the offender's minimum sentence, an interview and parole review would occur. If the reviewers determined the offender was reasonably likely to be paroled, a hearing would be set. If the case was deferred for later reconsideration, the offender was still entitled to a hearing at least once a year until a release date was set. In 2003, the Nebraska Legislature amended § 83-1,111 again and changed the requirement that if a case was deferred for later reconsideration, the offender was entitled to a parole review, rather than a parole hearing, at least once a year until a release date was set. See § 83-1,111(4) (Supp. 2003).

Moore argues that because his case was deferred for later reconsideration, the parole board has a legal duty to grant him a parole hearing at least once a year pursuant to § 83-1,111(4) as it existed at the time of his conviction. Moore claims that application of the parole laws as they exist now, which require a parole review once a year rather than a parole hearing, violates the Ex Post Facto Clause of the U.S. Constitution. Moore's argument is without merit.

A law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed, is an ex post facto law and will not be endorsed by the courts. *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003) (citing *State v. Gray*, 259 Neb. 897, 612 N.W.2d 507 (2000), and *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999)). This ex post facto analysis applies when a statutory amendment changes the punishment of a crime. *Id.*

The Nebraska Supreme Court has not yet addressed whether § 83-1,111 as amended is an ex post facto law. However, the U.S. Supreme Court has addressed whether other similarly amended statutes, if applied retroactively, violated the Ex Post Facto Clause of the U.S. Constitution, which is what Moore claims application of § 83-1,111 as amended does.

In *California Dept. of Corrections v. Morales*, 514 U.S. 499, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995), the U.S. Supreme Court held that application of a statutory amendment decreasing the frequency of parole suitability hearings under certain circumstances to prisoners convicted before the amendment did not violate the Ex Post Facto Clause. In *Morales*, the statute at issue initially entitled a prisoner to subsequent suitability hearings on an annual basis after initially being found unsuitable for parole. The statute was amended to authorize the parole board to

> defer subsequent suitability hearings for up to three years if the prisoner has been convicted of "more than one offense which involves the taking of a life" and if the Board [of Prison Terms] "finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding."

*Morales*, 514 U.S. at 503.

The prisoner in *Morales* argued that the amended statute as applied to him constituted an ex post facto law in violation of the U.S. Constitution. The prisoner argued that the statute as amended stiffened the standard of punishment for a crime already committed and that any legislative change that has any conceivable risk of affecting a prisoner's punishment is forbidden by the Ex Post Facto Clause. The U.S. Supreme Court rejected the prisoner's arguments.

The U.S. Supreme Court in *Morales* stated that the amendment did not lengthen a prisoner's sentence, did not change the substantive formula for securing any reductions to sentence ranges, did not affect the standards for fixing a prisoner's initial date of parole eligibility, and did not affect the standards for determining a prisoner's suitability for parole and setting a release date. The Court stated that the amendment only "introduced the possibility that after the initial parole hearing, the Board [of Prison Terms] would not have to hold another hearing the very next year, or the year after that, if it found no reasonable probability that [the prisoner] would be deemed suitable for parole in the interim period." 514 U.S. at 507. The Court noted that the focus of the amendment was "merely ' "to relieve the [Board of Prison Terms] from the costly and time-consuming responsibility of scheduling parole hearings" ' for prisoners who have no reasonable chance of being released." *Id.* The Court also noted that the amendment "simply 'alters the method to be followed' in fixing a parole release date under identical substantive standards." 514 U.S. at 508. The Court specifically rejected the prisoner's argument that the Ex Post Facto Clause forbids any legislative change that has any conceivable risk of affecting a prisoner's punishment.

Like the statutory amendment at issue in *Morales*, the amendments to § 83-1,111 at issue in the instant case simply alter the method to be followed in fixing a parole release date under identical substantive standards. Rather than receiving a parole hearing annually after being deferred for later reconsideration, a prisoner receives a parole review annually. If a prisoner is determined to be reasonably likely to be granted parole, then a parole hearing is held. Section 83-1,111 as amended, similar again to the statutory amendment at issue in *Morales*, relieves the parole board from the costly and time-consuming responsibility of scheduling parole hearings for prisoners who have no reasonable chance of being released.

In *Garner v. Jones*, 529 U.S. 244, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000), the U.S. Supreme Court held that retroactive application of a statute amended to increase the number of years permitted between parole reconsiderations did not violate the Ex Post Facto Clause of the U.S. Constitution. When the offender in

*Garner* committed the offense at issue, the relevant state law required parole reconsiderations to occur every 3 years. After the offender had begun his sentence, the law was amended to require parole reconsiderations to occur at least every 8 years. The offender filed an "action under . . . 42 U.S.C. § 1983, claiming [the statute as amended] violated the *Ex Post Facto* Clause." 529 U.S. at 248.

The U.S. Supreme Court stated in *Garner*:

> [N]ot every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited. . . . The question is "a matter of 'degree.' " . . . The controlling inquiry . . . was whether retroactive application of the change in [the] law created "a sufficient risk of increasing the measure of punishment attached to the covered crimes."

529 U.S. at 250 (quoting *California Dept. of Corrections v. Morales*, 514 U.S. 499, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995)). The Court in *Garner* noted that *Morales* did not suggest that all states model their parole consideration procedures after the law in *Morales*, but, rather, identified factors which convinced the Court that the statutory amendment at issue in *Morales* created an insignificant risk of increased punishment for covered inmates. The Court in *Garner* stated that "[s]tates must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." 529 U.S. at 252.

Regarding the amendment at issue in *Garner*, 529 U.S. at 255, the U.S. Supreme Court stated:

> The standard announced in *Morales* requires a more rigorous analysis of the level of risk created by the change in law [than a determination that a rule seems certain to result in some prisoners serving extended periods of incarceration]. When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.

In both *Morales* and *Garner*, the controlling inquiry is whether retroactive application of the amendment creates "a

sufficient risk of increasing the measure of punishment attached to the covered crimes." *Garner v. Jones*, 529 U.S. 244, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000). We find that the amendments to § 83-1,111 do not create a sufficient risk of increasing the measure of punishment attached to a sentence. Like the changes of law at issue in *Morales* and *Garner*, the amendments to § 83-1,111 at issue in the instant case do not modify the statutory punishment imposed for any offenses. The amendments also do not alter the standards for determining the initial date for parole eligibility or an inmate's suitability for parole. Rather, the amendments merely change the process by which the parole board reviews prisoners' parole possibilities. A prisoner is first reviewed by either two or more members of the parole board or by a person designated by the parole board. If the reviewer determines that a prisoner is reasonably likely to be granted parole, a hearing before a majority of the parole board's members is held. There is no indication that a parole review, with fewer people reviewing the prisoner's case, would conclude differently than a parole hearing with a majority of the parole board's members present.

Because § 83-1,111, as amended, does not by its own terms show a significant risk of increasing the measure of punishment afforded to prisoners, the next step according to *Garner* is to examine whether the implementation of the rule by the agency charged with exercising discretion will result in a longer period of incarceration than under the earlier rule. There is no indication that a prisoner will be incarcerated longer under the practical application of § 83-1,111, as amended, than the prisoner would have been under the prior version of the statute. The only difference between the prior version and the current version is that under § 83-1,111 as amended, a prisoner undergoes an additional step—a parole review—in the parole process, to determine whether a parole hearing is appropriate. Section 83-1,111 indicates that the difference between a parole review and a parole hearing is who examines the prisoner's case. A parole hearing involves a majority of the parole board's members; a parole review is conducted either by two or more of the parole board's members or by a person designated by the parole board. In either situation,

there is no indication that different standards are used or that different information is evaluated.

■ Section 83-1,111, as amended, requires a reviewer to determine whether a prisoner is reasonably likely to be granted parole before a parole hearing is permitted. If a prisoner does not receive a parole hearing, it is because that prisoner was not reasonably likely to be granted parole. A prisoner who does not receive a parole hearing still had his or her case reviewed and had a reviewer specifically determine that the prisoner was not reasonably likely to be granted parole. A prisoner is not going to incur a longer period of incarceration in this instance because he or she would not likely have been granted parole anyway. Accordingly, we cannot find that prisoners will be incarcerated longer under § 83-1,111 as amended than under the statute as it existed before the amendment, and we cannot find that application of § 83-1,111 as amended violates the Ex Post Facto Clause of the U.S. Constitution.

### 4. State-Created Liberty Interest

Finally, Moore argues that he has a state-created liberty interest in being paroled and thus is entitled to a parole hearing. In support of this argument, Moore cites to *Board of Pardons v. Allen*, 482 U.S. 369, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987); *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983); and *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). These cases are not relevant to the issue at hand in the case at bar.

In *Allen* and *Greenholtz*, the statutes that created a protected liberty interest involved statutorily mandated criteria for determining whether an inmate would be granted parole. These statutes were substantive in nature, rather than procedural as is § 83-1,111. *Hewitt*, on the other hand, did not even involve a statute that the Court determined created a protected liberty interest. In fact, *Hewitt* was expressly denounced by the U.S. Supreme Court in 1995, a fact Moore seems to have overlooked. See *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

We find that the cases discussed above involving parole review proceedings are far more applicable to the case at bar.

Accordingly, Moore's argument that he has a protected state-created liberty interest in being paroled is without merit.

## V. CONCLUSION

We find that the district court did not err in denying Moore's applications to proceed in forma pauperis without first holding a hearing or in determining that Moore's legal claim was frivolous. Pursuant to § 25-2301.02, a court is not required to conduct a hearing before denying an application to proceed in forma pauperis if the court has objected to the application on its own motion on the ground that the legal positions asserted therein are frivolous or malicious. Accordingly, Moore was not entitled to a hearing prior to the district court's denials of his applications to proceed in forma pauperis.

Furthermore, the district court did not err in determining that Moore's petition lacked legal merit. Moore's claim to relief depended upon a finding that he was entitled to a parole hearing annually, pursuant to § 83-1,111(4) as it existed at the time of his conviction. However, the U.S. Supreme Court has held that the retroactive application of procedural parole statutory amendments does not violate the Ex Post Facto Clause of the U.S. Constitution. Accordingly, the parole board does not have a legal duty to grant Moore a parole hearing, and thus, Moore's petition for a writ of mandamus is without merit. The district court's rulings are affirmed.

AFFIRMED.