determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[35] The sentences imposed in this case were within the statutory limits, and there was no abuse of discretion by the trial court.

[13] Dixon also argues that the robbery sentence should have been ordered to be served concurrently to the sexual assault sentence, for the reasons that both relied on the same fact pattern and the robbery was ancillary to the sexual assault because the items stolen were taken to conceal the sexual assault offense. It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes.[36] The crimes arose from the same incident, but they were completely different crimes with different elements. There was no abuse of discretion in the trial court's order of consecutive sentences.

## V. CONCLUSION

Finding no merit in any of Dixon's assignments of error, we affirm the judgment of the district court.

AFFIRMED.

CASSEL, J., not participating.

---

[35] *State v. Erickson, supra* note 3.

[36] *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991).

---

LADD D. KRINGS, APPELLEE, V. GARFIELD COUNTY BOARD OF
EQUALIZATION, APPELLEE, AND DOUGLAS A. EWALD, TAX
COMMISSIONER, AND RUTH A. SORENSEN, PROPERTY
TAX ADMINISTRATOR, APPELLANTS.

___ N.W.2d ___

Filed July 26, 2013.    No. S-12-623.

1. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Constitutional Law.** Constitutional interpretation presents a question of law.

4. **Taxation: Appeal and Error.** Questions of law arising during appellate review of the Tax Equalization and Review Commission decisions are reviewed de novo on the record.

5. **Taxation: Valuation: Words and Phrases.** Equalization is the process of ensuring that all taxable property is placed on the assessment rolls at a uniform percentage of its actual value.

6. **Taxation: Valuation.** The purpose of equalization of assessments is to bring the assessment of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax.

7. **Constitutional Law: Taxation: Appeal and Error.** The need for equalization by a county board of equalization, and by the Tax Equalization and Review Commission when reviewing the decision of a county board of equalization, stems from the constitutional requirement of uniformity contained in Neb. Const. art. VIII, § 1.

8. **Constitutional Law: Taxation: Valuation: Property: Agriculture.** Because Neb. Const. art. VIII, § 1(4), allows for agricultural and horticultural property to be valued in a way that is not uniform and proportionate with all other real property and because statutes have been enacted effectuating this difference, it is unnecessary and improper to equalize the value of nonagricultural, nonhorticultural property with the value of agricultural and horticultural property.

Appeal from the Tax Equalization and Review Commission. Affirmed in part, and in part reversed and remanded with directions.

Jonathan D. Cannon, Special Assistant Attorney General, and Mihdi Vahedi, Senior Certified Law Student, for appellants.

No appearance for appellees.

Heavican, C.J., Wright, Stephan, McCormack, and Cassel, JJ.

Per Curiam.

## NATURE OF CASE

Douglas A. Ewald, Tax Commissioner, and Ruth A. Sorensen, Property Tax Administrator, of the Department of Revenue (collectively the Department), appeal a decision of the Tax Equalization and Review Commission (TERC). TERC

concluded that the Garfield County Board of Equalization (the Board) correctly determined that land owned by taxpayer Ladd D. Krings was not agricultural or horticultural land. TERC further concluded, however, that the value of Krings' nonagricultural, nonhorticultural property should be equalized with the value of agricultural and horticultural land and, because TERC viewed the assessor's assessments of agricultural and horticultural land to be impermissibly low, equalized Krings' property by reducing its assessed value.

The Department agrees with TERC's conclusion that Krings' land was not agricultural or horticultural, but disagrees with TERC's conclusions that (1) the assessed value of Krings' nonagricultural, nonhorticultural land should be equalized with the assessed value of agricultural and horticultural land and (2) the county assessor's assessments of agricultural and horticultural land were improper.

There is no challenge before us relative to the finding that Krings' property is nonagricultural and nonhorticultural, and we affirm that decision. There is no challenge before us relative to a small portion of property deemed agricultural and horticultural, and we do not consider this decision by TERC. We conclude that when TERC determined that it needed to equalize the value of Krings' nonagricultural, nonhorticultural land with the value of agricultural and horticultural land in the county, such decision did not conform to the law. We therefore reverse that portion of the order wherein TERC performed such equalization. Because of this disposition, we need not consider whether the county assessor properly assessed agricultural and horticultural land.

## STATEMENT OF FACTS

Krings owns two contiguous parcels of land in Garfield County, Nebraska, which total 480 acres. One parcel is improved with a single-family dwelling. A combined 448.21 acres of the two parcels is subject to a warranty easement deed that Krings granted to the U.S. Commodity Credit Corporation as part of the Wetlands Reserve Program. In exchange for a one-time payment of $242,034, Krings granted the easement which placed restrictions on the use of the land for the

purpose of preserving the land as wetlands and a wildlife habitat. Krings was allowed certain compatible uses of the land, including managed timber harvesting and occasional haying or grazing.

The parcels were assessed for property tax purposes for the 2010 tax assessment year at $39,895 and $258,845. Krings protested such valuations to the Garfield County assessor and requested values of $18,000 and $152,320. The assessor recommended no changes, and the Board adopted the assessor's recommendations and original valuations. Krings appealed the Board's determinations regarding the parcels to TERC.

Krings asserted to TERC that the nonresidential portion of the parcels should have been assessed as agricultural or horticultural land as defined in Neb. Rev. Stat. § 77-1359 (Reissue 2009). If considered agricultural or horticultural land, pursuant to Neb. Rev. Stat. § 77-201(2) (Reissue 2009), the land would be assessed at 75 percent of its actual value. After a hearing, TERC concluded that the land was primarily used for the conservation purposes of the Wetlands Reserve Program, rather than for agricultural or horticultural purposes, that it therefore was not agricultural or horticultural land under § 77-1359, and that it therefore should be assessed at its actual value.

However, TERC went on to consider whether the assessed value of Krings' land should have been equalized with other property in Garfield County. TERC determined that for the 2010 tax assessment year at issue, the Garfield County assessor had improperly valued agricultural and horticultural land in the county at 70 percent of its actual value rather than 75 percent as provided in § 77-201(2). TERC concluded that in order for Krings' nonagricultural, nonhorticultural land to be equalized with the agricultural and horticultural land in the county, it must be assessed at 93.33 percent (70 percent divided by 75 percent) of its actual value. TERC therefore ordered lower equalized values for Krings' nonagricultural, nonhorticultural property.

Under Neb. Rev. Stat. § 77-701(4) (Cum. Supp. 2012), "[t]he Tax Commissioner or Property Tax Administrator may appeal any final decision of [TERC] relating to the granting

or denying of an exemption of real or personal property or relating to the valuation or equalization of real property." The Department has appealed TERC's decision in this case.

## ASSIGNMENTS OF ERROR

The Department claims that TERC erred when it (1) concluded that the value of Krings' nonagricultural, nonhorticultural land must be equalized with the value of agricultural and horticultural land in the county and (2) concluded that the Garfield County assessor improperly assessed agricultural and horticultural land at 70 percent of its actual value.

## STANDARDS OF REVIEW

[1,2] Appellate courts review decisions rendered by TERC for errors appearing on the record. See, Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2012); *Republic Bank v. Lincoln Cty. Bd. of Equal.*, 283 Neb. 721, 811 N.W.2d 682 (2012). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Republic Bank v. Lincoln Cty. Bd. of Equal., supra*.

[3,4] Constitutional interpretation presents a question of law. *City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011). Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *Republic Bank v. Lincoln Cty. Bd. of Equal., supra*.

## ANALYSIS

As an initial matter, we note that the Department agrees with TERC's determination that Krings' property was not agricultural or horticultural land. We further note that Krings did not appeal from TERC's decision and does not challenge TERC's decision that his land was not agricultural or horticultural land. Although the Department devotes a section of its brief supporting TERC's conclusion that Krings' land was not agricultural or horticultural land, the issue whether Krings' property is agricultural or horticultural land was not assigned as error and is not reviewed by this court in this appeal.

TERC's determination that Krings' property is nonagricultural and nonhorticultural is therefore affirmed. For completeness, we note that we are aware that TERC found a small portion of Krings' property to be properly characterized as agricultural and horticultural, and the Department does not challenge this determination, or that it was appropriate to equalize the value of this property with the value of other agricultural and horticultural land in the county. There is not an explicit assignment of error regarding this parcel, and we therefore do not discuss the correctness of its equalized value.

The Department first contends that TERC erred when it concluded that the value of Krings' nonagricultural, nonhorticultural land must be equalized with the value of agricultural and horticultural land in the county. We agree with the Department's argument that the Nebraska Constitution allows agricultural and horticultural land to be assessed at values that are not uniform with other types of land and that therefore, it was improper for TERC to equalize the value of Krings' nonagricultural, nonhorticultural land with the value of agricultural and horticultural land in the county.

[5-7] At issue in this case is Neb. Const. art. VIII, § 1, as it relates to the valuation of real property for purposes of taxation. Article VIII, § 1(1), provides in relevant part that "[t]axes shall be levied by valuation uniformly and proportionately upon all real property . . . except as otherwise provided in or permitted by this Constitution." Our prior case law indicates that the need for equalization stems from the constitutional requirement that real property be taxed using uniform and proportionate valuations. See *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d 802 (2008). In *Brenner*, we noted the constitutional requirement of uniform and proportionate valuation and stated:

> Equalization is the process of ensuring that all taxable property is placed on the assessment rolls at a uniform percentage of its actual value. The purpose of equalization of assessments is to bring the assessment of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax.

276 Neb. at 294, 753 N.W.2d at 818. We further tied the process of equalization to the constitutional requirement of uniformity when we stated that in carrying out its "duty to correct and equalize individual discrepancies and inequalities in assessments within the county," a county board of equalization "must give effect to the constitutional requirement that taxes be levied uniformly and proportionately upon all taxable property in the county." *Bartlett v. Dawes Cty. Bd. of Equal.*, 259 Neb. 954, 965, 613 N.W.2d 810, 818 (2000). The need for equalization by a county board, and by TERC when reviewing the decision of a county board of equalization, stems from the constitutional requirement of uniformity contained in article VIII, § 1.

However, while article VIII, § 1(1), requires uniform valuation of real property, as noted, such requirement is qualified by the phrase "except as otherwise provided in or permitted by this Constitution." Additional constitutional language pertaining to agricultural and horticultural land is relevant to the present case. Article VIII, § 1(4), provides as follows:

> [T]he Legislature may provide that agricultural land and horticultural land, as defined by the Legislature, shall constitute a separate and distinct class of property for purposes of taxation and may provide for a different method of taxing agricultural land and horticultural land which results in values that are not uniform and proportionate with all other real property and franchises but which results in values that are uniform and proportionate upon all property within the class of agricultural and horticultural land[.]

Acting on the authority of article VIII, § 1(4), the Legislature enacted § 77-1359, which defines "agricultural land and horticultural land" and which states in part:

> The Legislature finds and declares that agricultural land and horticultural land shall be a separate and distinct class of real property for purposes of assessment. The assessed value of agricultural land and horticultural land shall not be uniform and proportionate with all other real property, but the assessed value shall be uniform and

proportionate within the class of agricultural land and horticultural land.

The Legislature also enacted § 77-201(2), which currently provides, "Agricultural land and horticultural land as defined in section 77-1359 shall constitute a separate and distinct class of property for purposes of property taxation, shall be subject to taxation, unless expressly exempt from taxation, and shall be valued at seventy-five percent of its actual value." Thus, the framework for deciding this case is embodied in article VIII, § 1(1) and 1(4), of the Nebraska Constitution, as informed by the enabling legislation found at §§ 77-1359 and 77-201(2).

[8] The Department argues, and we agree, that because article VIII, § 1(4), allows for agricultural and horticultural property to be valued in a way that is not uniform and proportionate with all other real property and because statutes have been enacted effectuating this difference, it was unnecessary and improper for TERC to equalize the value of Krings' nonagricultural, nonhorticultural property with the value of agricultural and horticultural property in the county. Upon our appellate review, we conclude that the decision of TERC in this regard did not conform to the law. See *Republic Bank v. Lincoln Cty. Bd. of Equal.*, 283 Neb. 721, 811 N.W.2d 682 (2012).

In reaching its decision, TERC relied in part on *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984), and determined that the value of Krings' nonagricultural, nonhorticultural land needed to be equalized with the value of agricultural and horticultural land in the county. TERC's reliance on *Kearney Convention Center* was misplaced. In *Kearney Convention Center*, this court concluded that for the year 1981, a taxpayer's improved nonagricultural, nonhorticultural real property referred to as an "urban convention center" "was not assessed uniformly and proportionately with other property, to wit, farmland" and that the assessment of the taxpayer's property should be reduced to equalize its value with such other property. 216 Neb. at 303, 344 N.W.2d at 626. We note, however, that when *Kearney Convention Center*

was decided on January 27, 1984, article VIII, § 1, did not contain the provisions quoted above relating to agricultural land and horticultural land and that article VIII, § 1, was amended twice after *Kearney Convention Center* was decided in order to include the language presently contained in article VIII, § 1(4), pertaining to the different treatment of agricultural and horticultural land.

The first of the two amendments was described by this court as follows:

> In 1984 the Legislature proposed an amendment to Neb. Const. art. VIII, § 1. This amendment . . . was adopted by the voters at the November 6, 1984, election. . . . The proposition on the ballot stated, "A constitutional amendment authorizing the Legislature to separately classify agricultural and horticultural land." L. Res. 7, 88th Leg., 1st Spec. Sess. (1984). The amendment added the following language to art. VIII, § 1: "The Legislature may provide that agricultural land and horticultural land used solely for agricultural or horticultural purposes shall constitute a separate and distinct class of property for purposes of taxation."

*Banner County v. State Bd. of Equal.*, 226 Neb. 236, 244, 411 N.W.2d 35, 41 (1987). This court noted in *Banner County* that the 1984 amendment did not repeal the uniformity clause of article VIII, § 1. This court therefore read the amendment in connection with the uniformity clause and concluded that "the Legislature can divide the class of tangible property into different classifications, but these classifications remain subdivisions of the overall class of 'all tangible property,' and there must be a correlation between them to show uniformity." *Banner County v. State Bd. of Equal.*, 226 Neb. at 254, 411 N.W.2d at 46.

After this court filed the decision in *Banner County*, the Legislature in 1989 proposed another amendment to Neb. Const. art. VIII, § 1. See 1989 Neb. Laws, L.R. 2. The amendment was approved by voters in 1990. This second amendment did not repeal the uniformity clause but added language now found at article VIII, § 1(4), stating that in addition to providing that agricultural land and horticultural

land constitute a separate and distinct class of property, the Legislature

> may provide for a different method of taxing agricultural land and horticultural land which results in values that are not uniform and proportionate with all other real property and franchises but which results in values that are uniform and proportionate upon all property within the class of agricultural land and horticultural land.

The Introducer's Statement of Intent for L.R. 2 stated that it was a response to "the doubt the Nebraska Supreme Court has cast on the validity of" the 1984 amendment and legislation enacted pursuant thereto and that the intent was "to resolve this legal uncertainty by providing a clear exception to the uniformity requirement of the Nebraska Constitution for agricultural land." Revenue Committee, 91st Leg., 1st Sess. (Feb. 2, 1989).

The amendment proposed by the Legislature in 1989 addressed this court's decision in *Banner County*. The amendment clearly provided that although values of agricultural and horticultural land were to be uniform and proportionate within the class, they were not required to be uniform and proportionate with the value of other real property. Because the language of this provision, article VIII, § 1(4), is clear, it is not open to construction. See *State ex rel. Johnson v. Gale*, 273 Neb. 889, 734 N.W.2d 290 (2007).

As discussed above, the equalization process has the purpose of giving effect to the constitutional requirement of uniformity. However, after the amendments to article VIII, § 1, and the enactment of statutes pursuant to such authority providing for a different method of taxing agricultural and horticultural land, the constitution does not require uniformity between the class of agricultural and horticultural land and other types of real estate. Therefore, it is no longer required or proper to equalize the value of nonagricultural, nonhorticultural land with the value of agricultural and horticultural land. Equalization is still required within the class of agricultural and horticultural land, because the constitution still requires uniformity within that class. Therefore, when TERC undertook the task of equalizing the portion of Krings' land

which is agricultural and horticultural with agricultural and horticultural land in the county, the approach was authorized. Equalization is also required to give effect to the uniformity clause with respect to property generally, except to the extent that article VIII, § 1, makes certain exceptions to the uniformity requirement, including the exception for agricultural and horticultural land.

We conclude that TERC erred in this case when it endeavored to equalize the value of Krings' nonagricultural, nonhorticultural property with the value of agricultural and horticultural land in the county. There is no longer a constitutional requirement for the value of agricultural and horticultural land to be uniform and proportionate with the value of other real property; therefore, the equalization between Krings' nonagricultural, nonhorticultural land and the agricultural and horticultural land in the county was improper. We therefore reverse the portion of TERC's order in paragraph 2 in which it equalized the value of Krings' nonagricultural, nonhorticultural property with the value of agricultural and horticultural property. We further reverse that portion of TERC's order in paragraph 1 in which it vacated and reversed the value of nonagricultural, nonhorticultural property as decided by the Board.

The Department also assigns error to TERC's determination and discussion regarding the assessor's assessment of agricultural and horticultural land at 70 percent rather than 75 percent of its actual value. Krings' land is nonagricultural and nonhorticultural, and, as we have determined, there was no basis for equalization of Krings' nonagricultural, nonhorticultural land with agricultural and horticultural land in the county. TERC's comments regarding the assessor's actions exceeded the proper scope of the appeal before TERC. It was unnecessary in this case for TERC to consider or to explore whether the assessment of agricultural and horticultural land had been appropriately performed, and regardless of the substance of its analysis, we need not consider whether TERC erred in its conclusions regarding the assessment of agricultural and horticultural land.

## CONCLUSION

Because no error was assigned to TERC's determination that Krings' land was nonagricultural and nonhorticultural, we affirm that portion of TERC's order in which it so concluded. There is also no challenge to the correctness of the determination that a small portion of the property was agricultural and horticultural and that it was subject to equalization with other agricultural and horticultural land in the county, and we enter no order affecting this decision. We conclude that TERC erred when it equalized the value of Krings' nonagricultural, nonhorticultural land with the value of agricultural and horticultural land in the county. TERC's decision to equalize in this fashion did not conform to the law. We therefore reverse those portions of the order in which TERC reversed the Board's valuation regarding Krings' nonagricultural, nonhorticultural property and performed such equalization. We remand the cause to TERC with directions to enter an order ruling on the Board's determinations, consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

CONNOLLY and MILLER-LERMAN, JJ., participating on briefs.

---

STATE OF NEBRASKA, APPELLEE, V.
MATTHEW L. PANGBORN, APPELLANT.
___ N.W.2d ___

Filed July 26, 2013.    No. S-12-941.

1. **Trial: Evidence: Appeal and Error.** The admission of demonstrative evidence is within the discretion of the trial court, and a judgment will not be reversed on account of the admission or rejection of such evidence unless there has been a clear abuse of discretion.
2. **Trial: Juries: Evidence.** Demonstrative exhibits are defined by the purpose for which they are offered at trial—to aid or assist the jury in understanding the evidence or issues in a case.
3. **Trial: Evidence.** Exhibits admitted only for demonstrative purposes do not constitute substantive evidence.
4. **Rules of Evidence.** Where a Nebraska Evidence Rule is substantially similar to a corresponding federal rule of evidence, Nebraska courts will look to federal