In re Estate of Jack H. Gsantner, deceased.
Ryan Gray, Personal Representative of the Estate
of Jack H. Gsantner, deceased, appellant, v.
Kevin J. Gustafson et al., appellees.

___ N.W.2d ___

Filed May 23, 2014.    No. S-13-633.

1. **Judgments: Jurisdiction.** Jurisdictional questions that do not involve a factual dispute present questions of law.
2. **Decedents' Estates: Appeal and Error.** Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record.
3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
5. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.
6. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.
7. **Decedents' Estates.** A proceeding under the Nebraska Probate Code is a special proceeding.
8. **Final Orders: Words and Phrases.** A substantial right under Neb. Rev. Stat. § 25-1902 (Reissue 2008) is an essential legal right.
9. **Final Orders: Appeal and Error.** A substantial right is involved if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.
10. **Final Orders.** Substantial rights under Neb. Rev. Stat. § 25-1902 (Reissue 2008) include those legal rights that a party is entitled to enforce or defend.
11. **Decedents' Estates: Appeal and Error.** In reviewing the judgment awarded by the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

Appeal from the County Court for Douglas County: LAWRENCE E. BARRETT, Judge. Affirmed.

Andrew C. Sigerson and Lyndsay N. Bonwell, of Andrew C. Sigerson, P.C., L.L.O., for appellant.

Dean F. Suing and David A. Castello, of Katskee, Henatsch & Suing, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

WRIGHT, J.

## NATURE OF CASE

Ryan Gray, personal representative of the estate of Jack H. Gsantner, appeals from the orders of the county court awarding him a fee of $25,000 and overruling his motion to alter or amend the award. Finding no error on the record, we affirm the award of a personal representative fee of $25,000.

## SCOPE OF REVIEW

[1] Jurisdictional questions that do not involve a factual dispute present questions of law. *Pinnacle Enters. v. City of Papillion*, 286 Neb. 322, 836 N.W.2d 588 (2013).

[2,3] Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. See *In re Estate of Failla*, 278 Neb. 770, 773 N.W.2d 793 (2009). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Krings v. Garfield Cty. Bd. of Equal.*, 286 Neb. 352, 835 N.W.2d 750 (2013).

## FACTS

Gsantner died in February 2012. He was survived by neither a spouse nor children. His funeral services were provided by an Omaha, Nebraska, mortuary, of which Gray is the managing officer. Several months after the funeral, the estate owed $3,120.55 in funeral expenses.

As a creditor of Gsantner's estate, the mortuary sought appointment of Gray as personal representative in intestacy. In April 2012, he was informally appointed to serve in that capacity. In November, the county court entered an order of intestacy and formally appointed Gray as personal representative of the estate.

At the time of Gray's informal appointment, the value of the estate was estimated to be $127,400. Following Gray's informal appointment, he discovered the estate had extensive assets that were previously unknown to him. Gray also learned that Gsantner had executed a will. The final value of the estate was $5,180,514.23.

In December 2012, Gray filed a petition for formal probate of the will, determination of heirs, tentative determination of the inheritance tax, partial distribution of the estate, and payment of attorney fees and the personal representative fee. He submitted a request for fees in the amount of 5 percent of the gross estate, to be distributed equally between attorney fees and the personal representative fee. Five heirs of the estate (appellees) objected to Gray's request for fees as "excessive and unwarranted" under Neb. Rev. Stat. § 30-2480 (Reissue 2008). At appellees' request, the county court scheduled an evidentiary hearing to determine reasonable fees.

After the evidentiary hearing was scheduled but before it took place, appellees recommended a partial award of the personal representative fee in the amount of $17,500, "without prejudice" to the county court's final determination regarding the fee. The court granted appellees' request and awarded Gray a "partial fee" of $17,500.

At the evidentiary hearing, Gray and appellees adduced evidence to support a wide range of personal representative fees. The county court ultimately received all the exhibits into evidence.

In support of Gray's request for a personal representative fee in the amount of 2½ percent of the estate, Gray offered affidavits from five attorneys with experience in probate matters. These attorneys commented on (1) the size and complexity of Gsantner's estate, (2) the amount of work Gray had expended on his duties as personal representative (over 400 hours),

(3) the opportunity costs Gray had forgone in his regular employment while serving as personal representative, and (4) the quality and skill of Gray's work. Based on these facts, the various attorneys stated that a reasonable fee for Gray would range between 1 and 3 percent of the estate or between $150 and $225 per hour.

One of the affidavits submitted by Gray was from Thomas B. Thomsen, the attorney representing Gsantner's estate. Thomsen opined that Gray's performance was comparable to that of "any large bank trust department" and "any attorney [Thomsen had] ever worked with as personal representative" and that Gray "earned the maximum fee to be paid to a personal representative under Nebraska law." Another one of the attorneys providing an affidavit in support of Gray's position stated that Gray's "standard of work and detail in this estate approache[d] the level of professional fiduciary services and . . . merit[ed] fees approaching the level of a professional fiduciary."

Appellees offered the affidavit of a sixth Nebraska attorney, who opined, based on his experience, that a personal representative fee constituting 2½ percent of the gross estate was "excessive" and "would not be reasonable compensation as contemplated by Neb. Rev. Stat. §30-2480." This attorney also stated that he would expect a court to award a fee of $15 to $25 per hour to a lay personal representative with no preexisting fee arrangement with the decedent.

The county court determined that Gray was entitled to a personal representative fee in the amount of $25,000. The court noted that Gray had "maintained a log that recorded his mileage and hours expended on behalf of the estate," that this log was not offered into evidence, and that the "only indication in the other affidavits was that . . . Gray had spent approximately 400 hours in his duties." As compensation for those 400 hours, the award of $25,000 equated to $62.50 per hour.

On May 8, 2013, Gray filed a "motion to Reconsider" pursuant to Neb. Rev. Stat. § 25-1329 (Reissue 2008). On June 5, he filed an "Amended Motion to Reconsider." Because Gray filed each of these motions pursuant to § 25-1329, they functioned as motions to alter or amend.

In the amended motion, Gray alleged that at a prior hearing, he had attempted "to submit a log, or statement of the Personal Representative's time and efforts expended," and that he had only recently learned the documentation had not been received as an exhibit. At the hearing on Gray's motion, he asked the county court for "the ability to enter the log book" so that the award of fees could be reconsidered in light of that evidence.

The county court orally overruled the motion to reconsider at the conclusion of the hearing. On July 5, 2013, the court entered an order consistent with that ruling, which stated in its entirety: "This matter came on for hearing on June 21, 2013[,] on the Personal Representative's Motion to Reconsider. Motion to Reconsider is overruled."

Gray timely appeals. Pursuant to our statutory authority to regulate the dockets of the appellate courts of this state, we moved the case to our docket. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008). Appellees moved for summary dismissal for lack of jurisdiction, claiming that the order awarding personal representative fees was not a final order. We overruled the motion and allowed the case to proceed to oral argument.

## ASSIGNMENT OF ERROR

Gray assigns that the county court erred in finding that the personal representative fee awarded to him was reasonable under § 30-2480.

## ANALYSIS

### JURISDICTION

[4] We first address whether the order awarding the personal representative fee was a final order. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012).

[5,6] For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is

without jurisdiction to entertain appeals from nonfinal orders. *Id*. Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered. *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

We have not previously considered whether an order awarding a personal representative fee is a final, appealable order. In *In re Estate of Lehman*, 135 Neb. 592, 283 N.W. 199 (1939), we addressed the finality of orders awarding executors' fees. The orders in that case were for "partial distribution and allowances of executors' fees." See *id*. at 601, 283 N.W. at 203. The first awarded $1,400 in partial fees to each executor for his or her actions from April 30, 1928, to October 31, 1931. The second ordered $4,000 in partial fees for the executors' actions from October 31, 1931, to October 31, 1935. Each order was a partial fee and did not constitute a final award of executors' fees. On these facts, we held that the orders awarding partial executors' fees were "interlocutory orders and not final orders." *Id*. Our holding was specifically limited to "such orders sought to be appealed from" in that case. *Id*. Therefore, we did not create a bright-line rule that would be applicable in the case at bar. We did not make our determination of finality based upon § 25-1902, which, at that time, was codified at Comp. Stat. § 20-1902 (1929).

It is now standard practice for an appellate court to consider the finality of an order entered in probate proceedings under the rubric of § 25-1902. See, e.g., *In re Estate of McKillip, supra*; *In re Estate of Muncillo*, 280 Neb. 669, 789 N.W.2d 37 (2010); *In re Estate of Potthoff*, 273 Neb. 828, 733 N.W.2d 860 (2007); *In re Estate of Peters*, 259 Neb. 154, 609 N.W.2d 23 (2000); *In re Estate of Snover*, 233 Neb. 198, 443 N.W.2d 894 (1989). Thus, we employ § 25-1902 to determine whether the order awarding Gray a personal representative fee of $25,000 was a final order.

[7] The first and third categories of final orders in § 25-1902 are not at issue in the case at bar, so the question is whether the order awarding a personal representative fee of $25,000 affected a substantial right and was made in a special proceeding. A proceeding under the Nebraska Probate Code is a special proceeding. See *In re Estate of McKillip, supra*. The question is whether the order affected a substantial right.

[8-10] A substantial right under § 25-1902 is an essential legal right. *In re Estate of McKillip, supra*. A substantial right is involved if an order "affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken." *Id*. at 373, 820 N.W.2d at 875. Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend. *In re Estate of McKillip, supra*.

Gray argues that the order awarding a personal representative fee of $25,000 affected a substantial right, because as personal representative, he had a substantial legal right to reasonable compensation under § 30-2480. We agree. The order affected a substantial right because under the facts of this case, the order finally determined Gray's claim for reasonable compensation. Under § 30-2480, a personal representative is "entitled to reasonable compensation for his services." Gray was formally appointed as personal representative of Gsantner's estate and was entitled to "reasonable compensation." It was the award of $25,000 that determined the amount of compensation Gray was to receive.

At the time of the county court's order awarding a personal representative fee of $25,000, the estate had been partially distributed and Gray continued to serve as personal representative. Nonetheless, the court awarded Gray the entire amount of compensation to which the court found he was entitled for his services. Whereas the court's previous award of $17,500 noted that the award was a partial fee, the order in question did not include any language that would indicate the award was subject to later revision or augmentation. When Gray brought his application for fees, he had not requested hourly compensation, which would change in the event of further work, but a percentage of the estate. Also, the award was

made after the court conducted a special evidentiary hearing on the issue of fees. Thus, we conclude that the court's order awarding a personal representative fee of $25,000 was a final order that determined what constituted reasonable compensation for Gray's services.

In setting the amount of reasonable compensation at $25,000, the order disposed of Gray's claim under § 30-2480. The order awarded the only personal representative fee Gray was going to receive. The order was dispositive of Gray's claim for reasonable compensation under § 30-2480 and thus affected a substantial right.

Appellees argue that under § 25-1902, it is not sufficient that the order awarding a personal representative fee of $25,000 affected a substantial right of Gray. They assert that in order to be final, the order must affect a substantial right of the estate, not a substantial right of the personal representative. We disagree. The only support appellees provide for this proposition is *In re Adoption of Amea R.*, 282 Neb. 751, 807 N.W.2d 736 (2011), which is not applicable to the case at bar.

*In re Adoption of Amea R., supra*, considered whether a son could appeal from an order prohibiting him from participating in adoption proceedings initiated by his father. The son had sought to intervene in the proceedings not in his own behalf, but in a representative capacity as his father's "next friend." *Id.* at 753, 807 N.W.2d at 739. Because the son did not have a direct interest in the adoption proceedings, we concluded that his right to participate was vicarious to that of his father and, consequently, was not a substantial right under § 25-1902.

Appellees compare Gray's right to reasonable compensation to those of the son in *In re Adoption of Amea R., supra*. According to appellees' motion for summary dismissal, Gray's right is "vicarious and ancillary to the rights of the underlying estate" and is not a substantial right for purposes of § 25-1902.

But appellees' reliance on *In re Adoption of Amea R., supra*, is clearly misplaced. The relationship between Gray and Gsantner's estate is not analogous to that between the son and his father in that case. As a properly appointed personal

representative, Gray had a right to reasonable compensation under § 30-2480. That right existed independently of the rights of the estate. It was not dependent upon the rights of another party, as in *In re Adoption of Amea R., supra*. Additionally, because of the right bestowed by § 30-2480, Gray had a direct interest in the proceedings giving rise to the order from which he now appeals.

Because Gray's right to reasonable compensation was not vicarious, *In re Adoption of Amea R., supra*, provides no support for appellees' argument that under § 25-1902, a final order does not exist unless a substantial right of the underlying estate is affected. The county court's order awarding a personal representative fee of $25,000 determined the total amount of Gray's compensation, and as such, it affected Gray's substantial right and was a final order. See § 25-1902. Thus, we have jurisdiction to consider Gray's appeal from that order.

### Amount of Personal Representative Fee

Gray assigns that the county court erred in awarding him a personal representative fee of only $25,000. We review the award for error appearing on the record. See *In re Estate of Failla*, 278 Neb. 770, 773 N.W.2d 793 (2009). As such, our inquiry is "whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable." See *Krings v. Garfield Cty. Bd. of Equal.*, 286 Neb. 352, 356, 835 N.W.2d 750, 753 (2013).

Under § 30-2480, Gray was entitled to "reasonable compensation." The term "reasonable compensation" is not defined in § 30-2480. However, Neb. Rev. Stat. § 30-2482(2) (Reissue 2008) provides a list of factors "to be considered as guides in determining the reasonableness of a fee" awarded to a personal representative. These factors are provided to aid in reviewing a personal representative fee when it is before a court on the petition for review of an interested person. See § 30-2482. The factors to be considered are as follows:

> (a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;

(b) The likelihood, if apparent to the personal representative, that the acceptance of the particular employment will preclude the person employed from other employment;

(c) The fee customarily charged in the locality for similar services;

(d) The amount involved and the results obtained;

(e) The time limitations imposed by the personal representative or by the circumstances;

(f) The nature and length of the relationship between the personal representative and the person performing the services; and

(g) The experience, reputation, and ability of the person performing the services.

§ 30-2482(2). These factors provide an indication of what facts the Legislature intended to be considered when determining a reasonable fee.

The affidavits adduced by Gray and appellees provided information relevant to many of these factors. The affidavits presented by Gray opined that Gsantner's estate was complex and required extraordinary amounts of work by Gray, which he performed competently, professionally, and at great opportunity cost. These affidavits stated that a customary personal representative fee was between 1 and 3 percent of the estate or between $150 and $225 per hour.

In contrast, the affidavit proffered by appellees described the estate as "fairly 'liquid'" and emphasized that Gray was a "lay" personal representative. According to appellees' evidence, a lay personal representative typically received between $15 and $25 per hour. After weighing this evidence, the county court determined that Gray was entitled to $25,000 for his services.

[11] Gray asks us to reverse the award of $25,000, because the award disregards the evidence he submitted. In doing so, he asks us to reweigh the evidence. We decline to do so. In reviewing the judgment awarded by the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the

successful party, who is entitled to every reasonable inference deducible from the evidence. *In re Trust of Hrnicek*, 280 Neb. 898, 792 N.W.2d 143 (2010). When viewed in the light most favorable to appellees, the evidence supports the county court's award of a $25,000 personal representative fee.

The county court was presented with a wide range of evidence on the complexity of Gsantner's estate and what level of compensation would be customary for Gray's work, which are factors to be considered under § 30-2482. Indeed, the facts were far from "undisputed," as Gray contends. See brief for appellant at 21. Although Gray's evidence indicated that the estate was complex, that the quality of his work was equal to that of a large bank trust department, and that his work deserved much greater compensation, other evidence was to the contrary. Appellees' evidence showed that the estate was not complex, Gray's work was not out of the ordinary, and an award of $25,000 was reasonable given the customary compensation for such work.

It was within the province of the county court to decide upon which evidence it would rely. It was also within the court's discretion to weigh the factors that were relevant to its determination of reasonableness. Since appellees' evidence supported the award of a personal representative fee of $25,000, we cannot say that this award was contrary to the law. Neither can we say that it was arbitrary, capricious, or unreasonable. Therefore, we affirm the order of the county court.

## CONCLUSION

For the foregoing reasons, we conclude that we have jurisdiction over this appeal and we affirm the award of a personal representative fee of $25,000.

AFFIRMED.