SMITH v. BECK

[176 N.C. App. 757 (2006)]

_____

LARRY EUGENE SMITH, PETITIONER v. THEODIS BECK, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE N.C. DEPT. OF CORRECTION, RESPONDENT

No. COA05-561

(Filed 21 March 2006)

**1. Sentencing— change in good time credits—loss for disciplinary reasons—not ex post facto**

The application of new rules regarding the loss of good time credits by an inmate sentenced under the Fair Sentencing Act did not violate the ex post facto clauses of the United States and North Carolina constitutions. The amount of good time petitioner could earn did not change and was still governed under the old rules; the alteration was only to the amount of time which could be lost for various infractions.

**2. Sentencing— change in good time credits—disciplinary infractions—definition of sentence**

There was no violation of state law in new rules for an inmate's loss of good time credits after disciplinary violations where the change in rules does not affect the sentence unless the prisoner chooses to commit disciplinary infractions. As used in the session laws, "sentence" refers to the time an inmate must serve as a result of his conviction.

**3. Constitutional Law— change in inmate's good time credits—argument general rather than specific—no due process violation**

There was no due process violation in the application of new rules for an inmate's loss of good time credits. Petitioner's argument referred to a blanket statement that the new rules violated

his due process rights and he did not argue that he was deprived of due process on any individual infraction.

Appeal by petitioner from order entered 14 February 2005 by Judge W. Russell Duke, Jr. in the Superior Court in Wilson County. Heard in the Court of Appeals 8 December 2005.

*Attorney General Roy Cooper, by Assistant Attorney General J. Philip Allen, for respondent-appellee.*

*North Carolina Prisoner Legal Services, Inc., by Richard E. Giroux, for petitioner-appellant.*

HUDSON, Judge.

On 24 March 2004, petitioner Larry Eugene Smith filed a petition *pro se* seeking declaratory relief and writ of mandamus, claiming that respondent Theodis Beck, N.C. Department of Correction secretary, was decreasing his good time credits in violation of the *ex post facto* clause of the United States and North Carolina constitutions and in violation of state law. Respondent filed a motion to dismiss in June 2004. On 14 July 2004, the court appointed North Carolina Prisoner Legal Services to represent petitioner, who filed a motion for summary judgment on 3 February 2005. Following a hearing, the court denied the petition on 14 February 2005. Petitioner appeals. As discussed below, we affirm.

Petitioner is imprisoned for various offenses committed in August and September 1993, and for which he was sentenced beginning on 16 November 1994. Each sentence is governed by the Fair Sentencing Act ("FSA"). Section 15A-1340.7(b) of the FSA provides that

> Infractions of the rules shall be of two types, major and minor infractions. Major infractions shall be punished by forfeiture of specific amounts of accrued good behavior time, disciplinary segregation, loss of privileges for specific periods, demotion in custody grade, extra work duties, or reprimand. Minor infractions shall be punishable by loss of privileges for specific periods, demotion in custody grade, extra work duties, reprimand, but not by loss of accrued good behavior time or disciplinary segregation.

N.C. Gen. Stat. § 15A-1340.7(b) (1993). The FSA was repealed by the Structured Sentencing Act ("SSA") which applies to offenses occur-

**SMITH v. BECK**

[176 N.C. App. 757 (2006)]

ring on or after 1 January 1995. The SSA does not contain a counter-part to N.C. Gen. Stat. § 15A-1340.7.

Respondent's rules authorizing disciplinary procedures in effect between 1 November 1991 and 1 January 1994 ("the old rules") provided for the loss of up to thirty days of good behavior time ("good time"), with no loss of good time for minor infractions. Effective 1 January 1994, respondent approved a new set of rules ("the new rules") with new categories of infractions and new punishments for each category. Under the new rules, infractions formerly classified as minor now resulted in loss of good time. Since entering custody, petitioner has been found guilty of more than one hundred infractions, all under application of the new rules. For purposes of this litigation, the parties stipulated that petitioner would be adversely affected by the operation of the changed rules.

**[1]** Defendant first argues that the court erred in denying his petition because the application of the new rules violates the *ex post facto* clauses of the United States and North Carolina constitutions. We do not agree.

The United States Supreme Court considered the constitutionality of changes in good behavior time regulations in *Weaver v. Graham*, 450 U.S. 24, 67 L. Ed. 2d 17 (1981). *Weaver* concerned changes in prison regulations that prospectively reduced the amount of good behavior time a prisoner could earn. *Id.* at 25, 67 L. Ed. 2d at 20. In its analysis, the Supreme Court explained:

> First, we need not determine whether the prospect of the gain time was in some technical sense part of the sentence to conclude that it in fact is one determinant of petitioner's prison term—and that his effective sentence is altered once this determinant is changed. We have previously recognized that a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed. Second, we have held that a statute may be retrospective even if it alters punitive conditions outside the sentence. Thus, we have concluded that a statute requiring solitary confinement prior to execution is ex post facto when applied to someone who committed a capital offense prior to its enactment, but not when applied only prospectively.

> For prisoners who committed crimes before its enactment, [the new rules] substantially alters the consequences attached

to a crime already completed, and therefore changes the quantum of punishment. Therefore, it is a retrospective law which can be constitutionally applied to petitioner only if it is not to his detriment.

*Id.* at 32-33, 67 L. Ed. 2d at 25 (internal citations and quotation marks omitted). Because the change at issue was clearly detrimental to the defendant in *Weaver*, in that it reduced the amount of good behavior time he was able to accrue, the Court held it violated the *ex post facto* clause.

Respondent draws our attention to *Ewell v. Murray*, 11 F.3d 482 (4th Cir. 1993). In 1990, after the Commonwealth of Virginia passed a law requiring that every inmate of its Department of Corrections ("DOC") provide a blood sample prior to release, the DOC "issued regulations . . . which provide[d] for punishment, by loss of good conduct credits, of an inmate who refuses to provide a blood sample." *Id.* at 483. In discussing *Weaver*, the Fourth Circuit noted:

> The [*Weaver*] Court's holding, however, carefully noted that the statutory reduction in gain-time opportunities *was not related to infractions or prison behavior but applied to an inmate who complied fully with prison rules and regulations*, leading to the conclusion that the reductions of gain-time opportunities necessarily amounted to an alteration of the sentence originally imposed. . . . *In contrast, in the case before us, the opportunity for good conduct allowances of a well-behaving inmate is not altered*. An inmate who complies with rules and regulations receives the same credit for good behavior before and after the amendments to [the rules]. *A loss of good conduct credits is meted out only for infractions, and then only prospectively.*

*Id.* at 486-87 (internal citations and quotation marks omitted) (emphasis supplied). Petitioner contends that the new rules create an increase in his sentence *ex post facto* and that the situation here is analogous to that *Weaver*. However, in *Weaver*, the change in sentence occurred for all prisoners, no matter their behavior. Inmates could no longer earn the good time they would previously have been entitled to earn.

Here, the amount of good time petitioner could earn was unchanged and still governed under the old rules as specified in the FSA. Only the amount of good time which could be lost for various disciplinary infractions has been altered pursuant to the new rules.

The loss of good time occurs only when inmates choose to commit disciplinary infractions. We conclude that the situation before us is not analogous to *Weaver* and that decision is not applicable to the facts before us. We find the reasoning in *Ewell* persuasive, however, and accordingly, we overrule this assignment of error.

[2] Petitioner also argues that the application of the new rules to him violates his right to due process and state law. We disagree.

As quoted above, the FSA in N.C. Gen. Stat. § 15A-1340.7(b) bars the loss of good behavior time as a punishment for minor infractions. The repealing law specifies that:

> Prosecutions for, or sentences based on, offenses occurring before the effective date of this act [1 January 1995] are not abated or affected by the repeal or amendment in this act of any statute, and the statutes that would be applicable to those prosecutions or sentences but for the provisions of this act remain applicable to those prosecutions or sentences.

Session Laws 1993, c. 538. Petitioner contends that this language bars any changes in regulations that would have the effect of extending an inmate's sentence, including the new rules increasing the forfeiture of good time for certain infractions. Respondent contends that, in using this language, the General Assembly cannot have intended that the old rules be "locked in cement" and applied without modification to an inmate's sentence. Specifically, respondent urges us to interpret the word "sentence" to mean only the sentence imposed by the court, and not to any loss of good time days an inmate may have accrued. We interpret the word "sentence" as used in the session laws to refer to the amount of time an inmate must serve as a result of his conviction. As explained in the discussion of *Ewell* above, the change from the old rules to the new rules has not changed petitioner's sentence, unless he chooses to commit disciplinary infractions. We overrule this assignment of error.

[3] Petitioner also contends that the change in regulations violates his due process rights. The U.S. Supreme Court has determined that where

> the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the

circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff v. McDonnell*, 418 U.S. 539, 557, 951 (1974). However, petitioner does not argue that he has been deprived of due process with respect to any of the individual infractions on his record, but rather falls back on a blanket statement that his due process rights were violated by the imposition of the new rules. Having determined above that implementation of the new rules was constitutional, we conclude that petitioner's argument here is without merit.

Affirmed.

Judges TYSON and LEVINSON concur.